J-A23025-16

**NON-PRECEDENTIAL DECISION - SEE SUPERIOR COURT I.O.P. 65.37**

| | |
|---|---|
| COMMONWEALTH OF PENNSYLVANIA | IN THE SUPERIOR COURT OF PENNSYLVANIA |
| Appellee | |
| v. | |
| JAMES TIMOTHY MONTGOMERY | |
| Appellant | No. 1917 WDA 2015 |

Appeal from the Judgment of Sentence Entered August 25, 2015
In the Court of Common Pleas of Washington County
Criminal Division at No: CP-63-CR-0000835-2014

BEFORE:  LAZARUS, STABILE, and STRASSBURGER,[*] JJ.

MEMORANDUM BY STABILE, J.:                **FILED JANUARY 23, 2017**

Appellant James Timothy Montgomery appeals from the August 25, 2015 judgment of sentence[1] entered in the Court of Common Pleas of Washington County ("trial court"), following his jury conviction for aggravated indecent assault of a child, two counts of involuntary deviate sexual intercourse with a child, indecent assault of a person less than 13

---

[*] Retired Senior Judge assigned to the Superior Court.

[1] Although Appellant purports to appeal from the November 17, 2015 order denying his post-trial motion, the appeal properly lies from the judgment of sentence. **See Commonwealth v. Shamberger**, 788 A.2d 408, 410 n.2 (Pa. Super. 2001) (*en banc*), **appeal denied**, 800 A.2d 932 (Pa. 2002) (stating that in criminal action, an appeal properly lies from the judgment of sentence made final by denial of post-trial motions).

years of age, corruption of minors, and indecent exposure.[2] Upon review, we affirm.

The facts and procedural history underlying this case are undisputed.[3] Briefly, Appellant was charged with the above-referenced crimes following allegations of sexual abuse by his biological daughter, M.A. Following trial by jury, Appellant was found guilty of all crimes charged. On August 25, 2015, the trial court sentenced Appellant to an aggregate sentence of 120 to 240 months' imprisonment and classified him as a sexually violent predator ("SVP"). On September 4, 2015, Appellant filed a post-sentence motion challenging only the sufficiency of the evidence and his designation as an SVP. On November 17, 2015, the trial court denied Appellant's post-sentence motion. Appellant timely appealed to this Court. At the trial court's direction, Appellant filed a Pa.R.A.P. 1925(b) statement of errors complained of on appeal, raising three assertions of error:

I.   Appellant was wrongly convicted because there was not sufficient evidence to prove his or her guilt as [sic] the trial.
II.  As a matter of law, the evidence was insufficient to prove that the SOAB/SORNA finding was accurate based upon the standard of clear and convincing evidence.
III. [Appellant] claims his [t]rial [c]ounsel was ineffective at trial.

---

[2] 18 Pa.C.S.A. §§ 3125(b), 3123(b), 3126(a)(7), 6301(a)(1)(ii), and 3127(a), respectively.

[3] Unless otherwise specified, these facts come from the trial court's January 16, 2016 Pa.R.A.P. 1925(a) opinion. **See** Trial Court Opinion, 1/26/16, at 1-10.

Appellant's Rule 1925(b) Statement, 1/4/16. On January 16, 2016, the trial court issued a Pa.R.A.P. 1925(a) opinion addressing Appellant's assertions of error and concluding that he was not entitled to relief.

On appeal,[4] Appellant raises only two issues for our review.[5]

    I.    Whether based upon the standard of beyond a reasonable doubt, the finding by the jury of guilty of all charges cannot stand because the inconsistencies in testimony

---

[4] "A claim challenging the sufficiency of the evidence is a question of law." *Commonwealth v. Widmer*, 744 A.2d 745, 751 (Pa. 2000).

> The standard we apply in reviewing the sufficiency of the evidence is whether viewing all the evidence admitted at trial in the light most favorable to the verdict winner, there is sufficient evidence to enable the fact-finder to find every element of the crime beyond a reasonable doubt. In applying the above test, we may not weigh the evidence and substitute our judgment for the fact-finder. In addition, we note that the facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

*Commonwealth v. Antidormi*, 84 A.3d 736, 756 (Pa. Super. 2014), *appeal denied*, 95 A.3d 275 (Pa. 2014).

[5] Although contained in his Rule 1925(b) statement, Appellant's ineffectiveness claim has been abandoned on appeal, likely because, with limited exceptions not applicable here, it cannot be raised on direct appeal. *See Commonwealth v. Holmes*, 70 A.3d 562, 576 (Pa. 2013).

given by the victim with regards to the crimes that the victim indicated took place create reasonable doubt.[6]

II. Whether after a conviction for the crimes of aggravated assault of a child, involuntary deviant sexual intercourse with a child, indecent assault of a person under the age of 13, corruption of a minor, and indecent exposure, the sexual offenders assessment board's (SOAB) evaluation determined whether or not, by clear and convincing evidence, [Appellant] is a sexually violent predator.

Appellant's Brief at 7.

After careful review of the record, and the relevant case law, we conclude that the trial court accurately and thoroughly addressed the merits of Appellant's issues on appeal. **See** Trial Court Opinion, 1/26/16, at 10-22. Accordingly, we affirm the trial court's August 25, 2015 judgment of sentence. We further direct that a copy of the trial court's January 26, 2016 opinion be attached to any future filings in this case.

Judgment of sentence affirmed.

---

[6] To the extent Appellant's first claim subsumes or implicates a weight of the evidence challenge, such challenge is waived because he failed to raise it in his Rule 1925(b) Statement. **See Commonwealth v. Castillo**, 888 A.2d 775, 780 (Pa. 2005). Moreover, "[a] weight of the evidence claim must be preserved either in a post-sentence motion, by a written motion before sentencing, or orally prior to sentencing." **Commonwealth v. Thompson**, 93 A.3d 478, 490 (Pa. Super. 2014) (internal alteration and citations omitted); **see** Pa.R.Crim.P. 607(A). In this case, Appellant appears to raise a weight of the evidence challenge for the first time in his brief on appeal.

Judgment Entered.

_Joseph D. Seletyn_

Joseph D. Seletyn, Esq.
Prothonotary


Date: <u>1/23/2017</u>

IN THE COURT OF COMMON PLEAS OF WASHINGTON COUNTY, PENNSYLVANIA
CRIMINAL DIVISION

| | | |
|---|---|---|
| COMMONWEALTH OF PENNSYLVANIA, | ) | |
| | ) | |
| Appellee, | ) | |
| | ) | Nos. 835-2014 |
| v. | ) | 1917 WDA 2015 |
| | ) | |
| JAMES TIMOTHY MONTGOMERY, | ) | |
| | ) | |
| Appellant. | ) | |

## OPINION PURSUANT TO Pa.R.A.P. 1925(a)

This matter comes before the Court upon an appeal to the Superior Court by the

Appellant, James Timothy Montgomery, (hereinafter "Appellant"), from an Order of this Trial

Court dated November 17, 2015, that denied the Appellant's Post-Trial Motion in its entirety.

Appellant filed this appeal on November 30, 2015. On December 10, 2015, the Trial Court

directed the Appellant to file a Concise Statement of Errors Complained of on Appeal pursuant

to Pa. R.A.P. 1925(b). On December 29, 2015, the Appellant filed a "Motion to Extend Time"

which requested a time extension for filing his concise statement. The Court granted this

request, and the Appellant filed a timely statement on January 6, 2016, which included three

matters complained of on appeal. The Trial Court will address the issues raised below.

## PROCEDURAL HISTORY

On March 5, 2014, the Washington City Police Department filed a criminal complaint

against the Appellant that contained the following charges: Aggravated Indecent Assault of a

Child, 18 Pa.C.S.A. § 3125(b), two counts of Involuntary Deviate Sexual Intercourse with a

Child, 18 Pa.C.S.A. § 3123(b), Indecent Assault of a Person Under the Age of 13, 18 Pa.C.S.A. §



3126(a)(7), Corruption of Minors, 18 Pa.C.S.A. § 6301(A)(1)(ii), and Indecent Exposure, 18 Pa.C.S.A. § 3127(a). The charges arose from statements made from, M.A., the Appellant's daughter, who had reported to police that Appellant had sexually abused her in the city of Washington, Pennsylvania, between the years 2002 to 2004.

On March 6, 2014, an arrest warrant was issued for Appellant, and on March 26, 2014, the Appellant was arrested and arraigned on the above charges, and his bail was set at the monetary amount of $100,000. The Defendant could not secure bail, and as a result he was placed in the Washington County Correctional Facility. On March 28, 2014, the Appellant petitioned the Honorable Judge John F. DiSalle for a bond reduction hearing, and this hearing was ultimately held on April 1, 2014. After a hearing, Judge DiSalle modified Appellant's monetary bail to $100,000, 10% acceptable, and also placed Appellant on electric home monitoring, with the instruction that the Appellant was not permitted to leave Washington County, and that he refrain from speaking with the victim, M.A., any minor children, and M.A.'s stepmother.[1] The Appellant posted bond, and was released from the Washington County Correctional Facility.

On April 9, 2014, a preliminary hearing was held before Magisterial District Judge Ethan Ward, and all charges were bound over to the Washington County Court of Common Pleas. On July 1, 2014, the Commonwealth filed a Bill of Information against the Appellant, which contained the same charges as the criminal complaint. On November 3, 2014, Appellant appeared before the undersigned for plea court and indicated that he wanted to pursue a jury trial in this matter and the case was then listed for the February 2014 trial term. On February 2, 2014, both parties participated in jury selection and a jury was picked consisting of 12 jurors and 2

---

[1] On July 3, 2014, the Appellant's bond was modified to permit him to obtain employment within Washington County, to meet with his counsel, and to attend counseling/therapy sessions in Washington County.

2

alternates, and the trial was ultimately scheduled for February 5, 2014 and February 6, 2014. On February 6, 2014, after two days of trial, the jury found the Appellant guilty of all offenses contained in the criminal information: Aggravated Indecent Assault of a Child, two counts of Involuntary Deviate Sexual Intercourse with a Child, Indecent Assault of a Person Under the Age of 13, Corruption of Minors, and Indecent Exposure. The jury further determined that the victim, M.A., was under the age of 13 at the time the offenses occurred.

Following Appellant's conviction, this Court revoked his bail and scheduled sentencing for May 1, 2015. In addition, this Court ordered that the Sexual Offenders Assessment Board (hereinafter "SOAB") conduct an assessment of the Appellant to determine whether he should be classified as a Sexually Violent Predator (hereinafter "SVP") pursuant to Section 9799.24(a) of the Sex Offender and Registration Notification Act, 42 Pa.C.S.A. § 9799.10 *et seq.* (hereinafter "SORNA"). On April 29, 2015, this Court *sua sponte* rescheduled the sentencing hearing from May 1, 2015 to May 12, 2015, because it had not yet received any correspondence from the SOAB as to whether it recommended that the Appellant be designated an SVP. On May 5, 2015, upon receipt of the assessment, the Commonwealth petitioned the Court for a hearing to determine if the Appellant was an SVP, pursuant to Section 9799.24(e) of SORNA. This Court then scheduled an SVP hearing for May 12, 2015.

On May 11, 2015, Appellant presented a motion to the undersigned which requested a continuance of the SVP hearing and the sentencing hearing so that Appellant could obtain an expert. This Court then rescheduled both hearings to July 17, 2015 at 9:30 a.m. Thereafter, on July 16, 2015, Appellant presented an "Emergency Motion to Testify by Telephone," which this Court denied, and the SVP proceeding and sentencing hearings were rescheduled to take place

3

on August 12, 2015.[2] Once again, the two hearings were continued until August 25, 2015, by consent orders signed by Appellant's counsel and the Commonwealth.

On August 25, 2015, the Court first conducted an SVP hearing and then a sentencing hearing. Julia Lindemuth, MS, LPC, the member of the SOAB who performed the assessment of the Appellant, testified on behalf of the Commonwealth. Ms. Lindemuth testified as an expert that based on the criteria set forth at Section 9799.24 (b)(1) of SORNA, it was her opinion that the Appellant met the requirements necessary to be classified an SVP under SORNA. Dr. Michael Crabtree, Ph.D., appeared on behalf of the Appellant, and testified that in his professional opinion, the Appellant did not meet the criteria of an SVP. Based on the evidence presented, this Court determined that the Commonwealth had proved by clear and convincing evidence that the Appellant met the criteria of an SVP.

Following the SVP proceeding, this Court conducted Appellant's sentencing proceeding. During the sentencing, Jeremy Crow of the Washington County Adult Probation Department testified on behalf of the Commonwealth and submitted a presentence investigation report on Appellant. The victim, M.A., also provided the Court with a victim impact statement. During this hearing, Dr. Michael Crabtree, Ph.D., appeared on Appellant's behalf and testified at length about the Appellant's mental state. The Appellant did not exercise his right to allocution, and verbally waived his right to address the Court.

In consideration of the arguments presented by the Commonwealth and the Appellant, after examination of the presentence report, the nature of the offenses, the Appellant's character and in consideration of the Appellant's prior record score, along with Pennsylvania's sentencing guidelines, this Court imposed the following sentences on the Appellant: at Count 1, Aggravated

---

[2] The order denying Appellant's request for telephone testimony is incorrectly dated as August 17, 2015. The correct date of that order is July 16, 2015.

Indecent Assault of a Child, a felony of the first degree, a sentence of 36 months to 72 months; at Count 2, Involuntary Deviate Sexual Intercourse with a Child, a felony of the first degree, a sentence of 66 months to 132 months to run consecutively to Count 1; at Count 3, Involuntary Deviate Sexual Intercourse with a Child, a felony of the first degree, a sentence of 66 months to 132 months, to run concurrently with Count 2 and consecutively to Count 1; at Count 4, Indecent Assault of a Person Under the Age of 13, a felony of the third degree, a sentence of 6 months to 12 months to run consecutively to Counts 1, 2, and 3; at Count 5, Corruption of Minors, a misdemeanor of the first degree, a sentence of 6 to 12 months to run consecutively to Counts 1, 2, 3, and 4; at Count 6, Indecent Exposure, a misdemeanor of the first degree, a sentence of 6 to 12 months to run consecutively at Counts 1, 2, 3, 4, and 5. Appellant's aggregate sentence in this case was incarceration at an appropriate state correctional facility for a period of no less than 10 years, to no more than 20 years.[3]

On September 9, 2015, Appellant filed a Post-Trial Motion, and a hearing was scheduled on this matter for November 17, 2015. In consideration of the issues raised in the motion, arguments made by counsel at the hearing, and pertinent case law, the Court denied Appellant's Post-Trial Motion in its entirety. It is this Order that the Appellant now seeks to appeal.

## **FACTUAL HISTORY**

During the trial the jury heard evidence that the Appellant had sexually abused M.A. on multiple occasions in Washington County between the years of 2002 to 2004, when M.A. was five years of age.

M.A., the victim, who was seventeen years old at the time of this trial, testified before a jury to multiple instances where she stated Appellant sexually abused her when she was between

---

[3] Other conditions of the Appellant's sentence include: no contact with the victim, M.A., that he complete perpetrator counseling, and that he submit to a mental health evaluation, and a drug and alcohol evaluation and complete all recommended treatment.

the ages of four and eight and lived on Arch Street in Washington County, Pennsylvania. (Trial Transcript, 2/5/15, Page 38, Lines 1-10). M.A. testified that her first recollection of abuse was when she was four years of age, and that she remembered Appellant "came in [to my room] and shut the door. And [Appellant] got on my bed and he said that we were going to play house and that I was going to be the mom and he was going to be the dad." (Trial Transcript, 2/5/15, Page 39, Lines 8-11). M.A. further explained that the Appellant came into the room and took off his clothes, and proceeded to place his hand on her stomach, then under her pants to touch the inside of her vagina. (Trial Transcript, 2/5/15, Pages 41-42, Lines 16-7). M.A. stated that during this time, Appellant took off her clothes, placed her hand on his penis and instructed her to rub it. (Trial Transcript, 2/5/15, Page 42, Lines 8-11). M.A. also indicated that Appellant made her perform oral sex on him, and that he performed oral sex on her. (Trial Transcript, 2/5/15, Page 42, Lines 11-13).

M.A. testified that during this time period, Appellant would touch her in a sexual nature when he would bathe her by rubbing her nipples and vagina, and by touching her butt in an uncomfortable manner. (Trial Transcript, 2/5/15, Page 43, Lines 4-17). M.A. stated that during this time period, Appellant engaged in this type of behavior every time he bathed her. (Trial Transcript, 2/5/15, Page 44, Lines 9-13).

M.A. stated that on another occasion during this period, the Appellant appeared in M.A.'s bedroom during her bedtime, and proceeded to lay down with her, rubbed her belly, and then placed his hand down her pants onto her vagina, and then penetrated her with his fingertip. (Trial Transcript, 2/5/15, Page 45, Lines 7-18). M.A. testified that during this instance, Appellant made her touch his penis, and then made her suck on his penis, instructing her to "suck it like a lollipop." (Trial Transcript, 2/5/15, Pages 45-46, Lines 19-2).

6

M.A. explained to the jury that on another occasion when Appellant had entered her bedroom and began sexually abusing her that "[Appellant] lifted me up and turned me around and he – when he was doing that he said 'Here, let Daddy teach you a trick.' And then he put me in the 69 position." (Trial Transcript, 2/5/15, Page 46, Lines 5-8). M.A. explained that Appellant had then placed her on top of Appellant so that she was performing oral sex on him, and he was simultaneously performing oral sex on her. (Trial Transcript, 2/5/15, Page 46, Lines 9-13).

M.A. testified to another time where Appellant had taken her to his own bedroom and had begun touching her vagina and rubbing her clitoris. (Trial Transcript, 2/5/15, Page 47, Lines 1-14). After that, Appellant made M.A. perform oral sex on him, and instructed her to "lick it like a lollipop." (Trial Transcript, 2/5/15, Pages 47-48, Lines 20-6).

M.A. testified that she had made various disclosures of abuse throughout the years. During the trial, both parties stipulated that M.A. made the following disclosures: on March 14, 2013, M.A. made a disclosure in Oklahoma that "something happened between her and her father, but [she] refused to disclose additional details." (Trial Transcript, 2/6/15, Page 203, Lines 7-14); on August 8, 2013, M.A. "disclosed sexual abuse by her father in the State of Kentucky;" and on February 14, 2014, a disclosure was made to Washington County Children and Youth Services. (Trial Transcript, 2/6/15, Page 203, Lines 21-24). It was this disclosure that prompted this criminal investigation.

M.A. testified to the jury that she did not remember being sexually abused by Appellant until she entered therapy. (Trial Transcript, 2/5/15, Pages 53-54 Lines 6-18); (Trial Transcript, 2/5/15, Page 132, Lines 6-9). M.A. stated that through therapy, she was able to recall instances of sexual abuse that had occurred in Kentucky. (Trial Transcript, 2/5/15, Pages 53-54 Lines 6-18). However, she explained, when she and her family moved back into the Arch Street

7

residence, she was able to remember the specific instances sexual abuse perpetrated by the Appellant that occurred in that home in Washington. (Trial Transcript, 2/5/15, Page 132 Lines 13-17).

On February 15, 2014, a day after M.A. made a disclosure to Washington County Children and Youth Services, M.A. stated that she called Appellant to let him know it was being reported. M.A. testified that she and Appellant got into an argument about the disclosure and the sexual abuse. (Trial Transcript, 2/5/15, Page 89 Lines 8-19). Following this telephone conversation, the following text message exchange took place between M.A. and Appellant:

> **M.A.:** Whether you want to beilive (sic) it or not what you did to me was so WRONG & you are over it? thats (sic) nice because I will probably never get over it. You made me feel like it was my fault my entire life I ask myself what did I do so wrong to deserve that? Now im (sic) realizing my entire life up until I was 8 things happened. Now I am suffering from PTSD, deppression (sic) & anxiety. I ended up in the hospital the other night because of YOU not ME or my grade (sic) YOU[4]
>
> **Appellant:** You should try not giving me a guilt trip and get help.
>
> **M.A.:** I need you to realize the gravity of what you have done & know its (sic) not because of my grades or me having to babysit when mom WORKS honestly you deserve a guilt trip. & (sic) you are doing a great job of convincing your COUSIN misty (sic) you arent (sic) a sick creep.
>
> **Appellant:** Well look who's all grown up. She is not my cousin. She is your uncle Johnny's girlfriends (sic) kid. She is by no way related to me. I don't feel guilty for my past anymore. I have gave it all to Jesus. That's why I can say I am over it. If you dwell in the past you can never plan for a bright future. That may be something you need to do. You are a mom now. I will pray The Lord gives you peace and cleanses you of the hate that is slowly consuming you.

(Commonwealth Exhibit 1).

---

[4] This text message string was comprised of three total messages.

8

Following M.A.'s testimony, Detective Daniel Rush of the City of Washington Police Department testified regarding his investigation of the case. He explained that he had received a complaint of juvenile sexual abuse from Washington County Children and Youth Services on February 14, 2014, and he began his investigation by interviewing M.A. on March 3, 2014. (Trial Transcript, 2/6/15, Page 209 Lines 11-14). Detective Rush testified that M.A. had provided several consistent statements about the abuse. (Trial Transcript, 2/6/15, Page 213, Lines 5-11). He further stated that during the initial interview, M.A. was visibly upset, and she was crying and shaking. (Trial Transcript, 2/6/15, Page 214, Lines 13-25). Detective Rush testified that based on M.A.'s statements, he filed a criminal complaint with the charges of Aggravated Indecent Assault of a Child, two counts of Involuntary Deviate Sexual Intercourse with a Child, Indecent Assault of a Person Under the Age of 13, Corruption of Minors, and Indecent Exposure, against the Appellant.

Appellant testified that he had never sexually abused M.A. (Trial Transcript, 2/6/15, Pages 257, Lines 15-20). Appellant stated that he believed M.A. had been angry with him for leaving her mother and the family and moving to Ohio to be with his new girlfriend. (Trial Transcript, 2/6/15, Page 298, Lines 15-20). He stated that on February 14, 2014, M.A. had called him, and they had a conversation about M.A.'s grades, and that they did not have a conversation about sexual abuse. (Trial Transcript, 2/6/15, Pages 275-276, Lines 15-20). Appellant testified that when he received the text messages referenced above, he believed they pertained to him using drugs in the past, leaving M.A., placing M.A. in foster care and leaving the family. (Trial Transcript, 2/6/15, Page 298, Lines 15-20).

When questioned on direct examination if he had ever touched M.A. in a sexual manner, Appellant responded, "No." (Trial Transcript, 2/6/15, Pages 282-283 Lines 24-1). On cross-

examination, Appellant stated that he bathed M.A. as a child and there were times that he did take naps with her. (Trial Transcript, 2/6/15, Page 306 Lines 6-12); (Trial Transcript, 2/6/15, Pages 306-307, Lines 24-15).

Based on the testimony presented at trial, the jury convicted the Appellant of all six counts contained within the criminal information.

1. Whether the Appellant was wrongfully convicted because there was insufficient evidence presented at trial to prove him guilty beyond a reasonable doubt.

Appellant first argues that there was insufficient evidence presented to support all six of his convictions. Specifically, Appellant asserts that no jury could find him guilty of these crimes beyond a reasonable doubt because the victim, M.A., provided inconsistent statements regarding the abuse. As our Superior Court has explained, "When reviewing a challenge to the sufficiency of the evidence, we must regard all the evidence in the light most favorable to the verdict winner, giving that party the benefit of all reasonable inferences. Additionally, an appellate court does not weigh the evidence or substitute its judgment for that of the fact-finder." Commonwealth v. Bedford, 50 A.3d 707, 711 (Pa. Super. 2012) (internal citations omitted). In addition:

> "[T]he facts and circumstances established by the Commonwealth need not preclude every possibility of innocence. Any doubts regarding a defendant's guilt may be resolved by the fact-finder unless the evidence is so weak and inconclusive that as a matter of law no probability of fact may be drawn from the combined circumstances. The Commonwealth may sustain its burden of proving every element of the crime beyond a reasonable doubt by means of wholly circumstantial evidence. Moreover, in applying the above test, the entire record must be evaluated and all evidence actually received must be considered. Finally, the finder of fact while passing upon the credibility of witnesses and the weight of the evidence produced, is free to believe all, part or none of the evidence.

Commonwealth v. Nypaver, 69 A.2d 708, 714 (Pa. Super. 2013) (citations omitted).

10

In the instant matter, Appellant argues that the Commonwealth failed to sustain its burden on every count because there was not enough evidence presented for the jury to convict Appellant of these crimes beyond a reasonable doubt. Before addressing Appellant's meritless arguments below, this Court notes, "[T]hat the uncorroborated testimony of a sexual assault victim, if believed by the trier of fact, is sufficient to convict a defendant, despite contrary evidence from defense witnesses. If the factfinder reasonably could have determined from the evidence adduced that all of the necessary elements of the crime were established, then that evidence will be deemed sufficient to support the verdict." Commonwealth v. Charlton, 902 A.2d 554, 562 (Pa. Super. 2006) (internal citation omitted). The Trial Court will address each of the Appellant's convictions, and the evidence presented in respect to those crimes, below.

### *Aggravated Indecent Assault of a Child, 18 Pa.C.S.A. § 3125(b)*

In order to sustain a conviction of Aggravated Indecent Assault of a Child, the Commonwealth must prove beyond a reasonable doubt that:

> **(a) Offenses defined.**--Except as provided in sections 3121 (relating to rape), 3122.1 (relating to statutory sexual assault), 3123 (relating to involuntary deviate sexual intercourse) and 3124.1 (relating to sexual assault), a person who engages in penetration, however slight, of the genitals or anus of a complainant with a part of the person's body for any purpose other than good faith medical, hygienic or law enforcement procedures commits aggravated indecent assault if:
>
> (1) the person does so without the complainant's consent;
> (2) the person does so by forcible compulsion;
> (3) the person does so by threat of forcible compulsion that would prevent resistance by a person of reasonable resolution;
> (4) the complainant is unconscious or the person knows that the complainant is unaware that the penetration is occurring;
> (5) the person has substantially impaired the complainant's power to appraise or control his or her conduct by administering or employing, without the knowledge of the complainant, drugs, intoxicants or other means for the purpose of preventing resistance;

11

(6) the complainant suffers from a mental disability which renders him or her incapable of consent;

(7) the complainant is less than 13 years of age; or

(8) the complainant is less than 16 years of age and the person is four or more years older than the complainant and the complainant and the person are not married to each other.

**(b) Aggravated indecent assault of a child.**--A person commits aggravated indecent assault of a child when the person violates subsection (a)(1), (2), (3), (4), (5) or (6) and the complainant is less than 13 years of age.

18 Pa.C.S.A. 3125. In this matter, the Commonwealth alleged that Appellant committed Aggravated Indecent Assault of a Child by engaging in penetration of M.A.'s genitals without M.A.'s consent while she was under the age of thirteen.

In Commonwealth v. Velez, the Superior Court determined that a nine year old child did not consent to sexual contact where the child "indicated that [Defendant's] acts were bad, did not feel right, and that she was afraid and angry at [Defendant.]" 51 A.3d 260, 265-266 (Pa. Super. 2012). Digital penetration is sufficient to support a conviction for aggravated indecent assault. Commonwealth v. Filer, 846 A.2d 139, 141 (Pa. Super. 2004).

During the trial, M.A. testified that the Appellant "would touch my vagina and – when I say touch my vagina, I mean my clitoris. And he would, you know, put his fingertip inside my vagina and rub around. Just like – not the whole thing but the fingertip. I remember it hurting." (Trial Transcript, 2/5/15, Page 45, Lines 14-18). M.A. stated that she did not tell anyone of the abuse because "I – the sick feeling that I would get in my stomach also came with guilt because I didn't know what was going on. I was just scared. I felt sick. I felt like there had to be a reason why this was happening to me. I had to have done something wrong. I was scared. I didn't know what was going on. I was young." (Trial Transcript, 2/5/15, Pages 43-44, Lines 22-3). M.A. testified that when Appellant sexually abused her, she remembers "feeling just so scared and so sick and shaking. And everything would go on and I could never talk." (Trial Transcript,

12

2/5/15, Page 45, Lines 19-22). M.A. further explained, "I was scared. I thought it was my fault as well. You know, I loved my dad. He was my dad. I never looked at him as my abuser. I looked at him as my father who did these things to me that I didn't understand but I knew was wrong. And I felt like it was my fault. I felt guilty for it. I felt sick." (Trial Transcript, 2/5/15, Page 48, Lines 14-19).

As provided above, M.A. provided sufficient testimony for the jury to convict Appellant of Aggravated Indecent Assault of a Child. M.A. testified that when she was under the age of thirteen, Appellant digitally penetrated her vagina. M.A. also testified in detail to the jury about how the abuse made her feel and react; specifically that she physically responded to the abuse by shaking. M.A.'s testimony regarding her feelings about the abuse and her reaction to it demonstrates that she did not consent to any sexual act with Appellant. Accordingly, the jury was provided with sufficient evidence to meet each and every element of the crime of Aggravated Indecent Assault of a Child and therefore the jury's verdict is free from error.

***Involuntary Deviate Sexual Intercourse with a Child, 18 Pa.C.S.A. § 3123(b)***

To sustain a conviction of Involuntary Deviate Sexual Intercourse with a Child, the jury must have found beyond a reasonable doubt that the Appellant had "engage[d] in deviate sexual intercourse with a complainant who is less than 13 years of age." 18 Pa.C.S.A. § 3123(b). "Deviate sexual intercourse" is defined in Section 3101 of the Pennsylvania Crimes Code as

> "Sexual intercourse per os or per anus between human beings and any form of sexual intercourse with an animal. The term also includes penetration, however slight, of the genitals or anus of another person with a foreign object for any purpose other than good faith medical, hygienic or law enforcement procedures."

18 Pa C.S.A. § 3101.

13

During the trial, M.A. stated that during the years of 2002 to 2004, when she was under the age of 13, Appellant had forced her to place his penis in her mouth and perform oral sex on him on several different occasions. M.A. testified that on one occasion, the Appellant "lifted me up and turned me around and he – when he was doing that, he said, 'Here, let Daddy teach you a trick.' And he put me in the 69 position." (Trial Transcript, 2/5/15, Page 46 Lines 7-10). M.A. further explained that the 69 position meant that she was "on top of [Appellant] performing oral sex on him, and he was doing the same to me. Licking my vagina." (Trial Transcript, 2/5/15, Page 46 Lines 11-13).

M.A. also described to the jury that on another occasion, Appellant led M.A. to his bed room and had forced her to perform oral sex on him. M.A. testified "[Appellant] would tell me to lick his penis. And he would get frustrated when I wouldn't do it the way he wanted me to. I would be scared and I would just look at it and be disgusted because I never knew what was going on." (Trial Transcript, 2/5/15, Page 47 Lines 20-25). M.A. further explained, "He would [say] – 'Not like that. Do it like this. Lick it like a lollipop.' And I would just because I was scared. And he would say, 'Just like that' and moan." (Trial Transcript, 2/5/15, Page 48 Lines 3-6). Appellant testified that he had never sexually abused M.A. (Trial Transcript, 2/6/15, Pages 257, Lines 15-20).

As the trier of fact, the jury determined that Appellant was guilty of two counts of Involuntary Deviate Sexual Intercourse with a Child. Appellant argues that there was not enough evidence presented during the trial to sustain this conviction. However, as cited at length above, M.A. testified to two occasions wherein Appellant forced her to perform oral sex on her when she was under the age of 13. As our Supreme Court has explained:

> A claim challenging the sufficiency of the evidence is a question of
> law. Evidence will be deemed sufficient to support the verdict

14

when it establishes each material element of the crime charged and
the commission thereof by the accused, beyond a reasonable doubt.

Commonwealth v. Widmer, 744 A.2d 745, 751 (Pa. 2000). Because M.A. provided the jury with

testimony that Appellant had her perform oral sex with him on two separate occasions while she

was under the age of 13, as a matter of law there was clearly enough evidence to convict

Appellant of two counts of the crime of Involuntary Deviate Sexual Intercourse with a Child.

Accordingly, this conviction should be sustained.

### *Indecent Assault of a Person Under the Age of 13, 18 Pa.C.S.A. § 3126(a)(7)*

To support a conviction for the crime of Indecent Assault of a Person Under the Age of

13, the jury must have determined beyond a reasonable doubt that the Appellant had:

> [I]ndecent contact with the complainant, causes the complainant to
> have indecent contact with the person or intentionally causes the
> complainant to come into contact with seminal fluid, urine or feces
> for the purpose of arousing sexual desire in the person or the
> complainant and: (a)(7) the complainant is less than 13 years of
> age . . .

18 Pa.C.S.A. § 3126(a)(7). Indecent contact is defined as "Any touching of the sexual or other

intimate parts of the person for the purpose of arousing or gratifying sexual desire, in any

person." 18 Pa.C.S.A. § 3101.

During the trial, M.A. testified that between the years 2002 and 2004, that Appellant had

touched her vagina. M.A. stated that while bathing her, Appellant would "rub on my nipples and

he would also rub on my vagina, and, you know, touch my butt, which made me extremely

uncomfortable." (Trial Transcript, 2/5/15, Page 43 Lines 4-17). M.A. explained that on several

occasions, Appellant would begin the abuse by rubbing her stomach, and then he would proceed

to reaching down her pants, and touching her vagina. (Trial Transcript, 2/5/15, Page 47 Lines 9-

14); (Trial Transcript, 2/5/15, Page 41 Lines 16-24). M.A. testified that Appellant "[Made] me

15

touch his penis and give him a handjob." (Trial Transcript, 2/5/15, Page 42 Lines 8-11). M.A. told the jury, that during this time, Appellant "Always [made] me touch his penis." (Trial Transcript, 2/5/15, Page 45 Line 19).

As the Superior Court has explained, "The Commonwealth can meet its burden by wholly circumstantial evidence and any doubt about the defendant's guilt is to be resolved by the fact finder unless the evidence is so weak and inconclusive that, as a matter of law, no probability of fact can be drawn from the combined circumstances." Commonwealth v. Watley, 81 A.3d 108, 113 (Pa. Super. 2013) (*en banc*). As described above, M.A. testified during the trial that the Appellant had touched her vagina, breasts and butt in a sexual manner and that he had forced her to touch his penis when she was under the age of 13. Accordingly, the jury was provided with sufficient evidence to meet each and every element of the crime of Indecent Assault of a Person Under the Age of 13, and therefore the jury's verdict is free from error.

### Corruption of Minors, 18 Pa.C.S.A. § 6301(A)(1)(ii).

The criminal offense of Corruption of Minors is defined as:

> Whoever, being of the age of 18 years and upwards, by any course of conduct in violation of Chapter 31 (relating to sexual offenses) corrupts or tends to corrupt the morals of any minor less than 18 years of age, or who aids, abets, entices or encourages any such minor in the commission of an offense under Chapter 31 . . .

18 Pa.C.S.A. § 6301(A)(1)(ii). The Superior Court "has expounded on the definition of the corruption of minors, holding, '[actions that] would offend the common sense of the community and the sense of decency, propriety and morality, which most people entertain,' are those which shall be considered corrupting a minor." Commonwealth v. Leatherby, 116 A.3d 73, 82 (Pa. Super. 2015) (internal citation omitted).

As described at length above, M.A. testified that Appellant, who was over 18 years of age at the time, forced her to have oral sex with him, made her touch his penis, and touched her breasts, vagina and butt, while M.A. was under the age of thirteen. It is clear the evidence presented at trial, which demonstrated extensive sexual abuse by Appellant, was sufficient to sustain his conviction for corruption of a minor.

### *Indecent Exposure, 18 Pa.C.S.A. § 3127(a).*

The crime of Indecent Exposure occurs where "a person commits indecent exposure if that person exposes his or her genitals in any public place or in any place where there are present other persons under circumstances in which he or she knows or should know that this conduct is likely to offend, affront or alarm." 18 Pa.C.S.A. § 3127(a). Our Superior Court has made it very clear that "It is without question that when addressing a sufficiency of the evidence claim, we must view the facts in a light favorable to the Commonwealth, as verdict winner." Commonwealth v. Tiffany, 926 A.2d 503, 510 (Pa. Super. 2007).

During the trial, M.A. testified that Appellant would take his clothes off in front of her before the sexual abuse, thereby exposing his penis to her. (Trial Transcript, 2/5/15, Page 47 Lines 15-18); (Trial Transcript, 2/5/15, Page 40-41 Lines 25-5); (Trial Transcript, 2/5/15, Page 41 Lines 16-21); (Trial Transcript, 2/5/15, Page 45 Lines 7-13). Where sufficiency of the evidence is raised on appeal and the Commonwealth is the verdict winner, the facts must be viewed in a light favorable to the Commonwealth. In this case the testimony of M.A. demonstrated that the Appellant exposed his genitals to M.A., a child under the age of 13, for sexual gratification on various occasions. As a result, the evidence presented during the two days of trial was sufficient for the jury to convict Appellant of Indecent Exposure beyond a reasonable doubt.

17

As set forth in the proceeding paragraphs, Appellant's claims regarding sufficiency of the evidence lack any merit and therefore his convictions should be sustained as a matter of law. The Trial Court notes that the Appellant's concise statement has failed to raise the argument that the jury's verdict was against the weight of the evidence, and accordingly this issue is waived on appeal. Pa.R.A.P. 1925(b)(4)(vii).

> 2. Whether the Trial Court committed an error of law by finding through clear and convincing evidence that the Appellant met the criteria to be deemed an SVP pursuant to SORNA.

Appellant next argues that the Trial Court erred as a matter of law in finding by clear and convincing evidence that the Appellant met the criteria of an SVP. Under SORNA, after a defendant is convicted of a sexually violent offense[5], the trial court must order the SOAB to conduct an assessment of the defendant prior to sentencing to determine whether he or she meets the criteria of an SVP. 42 Pa.C.S.A. § 9799.24(a). Section 9799.24(b) provides that in performing this assessment, the SOAB must examine the following factors:

> (1) Facts of the current offense, including:
>     (i) Whether the offense involved multiple victims.
>     (ii) Whether the individual exceeded the means necessary to achieve the offense.
>     (iii) The nature of the sexual contact with the victim.
>     (iv) Relationship of the individual to the victim.
>     (v) Age of the victim.
>     (vi) Whether the offense included a display of unusual cruelty by the individual during the commission of the crime.
>     (vii) The mental capacity of the victim.
> (2) Prior offense history, including:
>     (i) The individual's prior criminal record.
>     (ii) Whether the individual completed any prior sentences.

---

[5] The term "sexually violent offense" is defined as any offense outlined in the tier system contained at Section 9799.14. In this matter, Appellant was convicted of five crimes designated as a sexually violent offense: Aggravated Indecent Assault of a Child, (Tier III) two counts of Involuntary Deviate Sexual Intercourse with a Child, (Tier III) Indecent Assault of a Person Under the Age of 13, (Tier III), and Corruption of Minors, (Tier I).

18

    (iii) Whether the individual participated in available
    programs for sexual offenders.
  (3) Characteristics of the individual, including:
    (i) Age.
    (ii) Use of illegal drugs.
    (iii) Any mental illness, mental disability or mental
    abnormality.
    (iv) Behavioral characteristics that contribute to the
    individual's conduct.
  (4) Factors that are supported in a sexual offender assessment field
  as criteria reasonably related to the risk of reoffense.

42 Pa.C.S.A. § 9799.24(b).[6] "An SOAB board member conducts the assessment to determine if

the individual should be classified as an SVP. The SOAB merely assesses the defendant; it does

not perform an adjudicative function." Commonwealth v. Prendes, 97 A.3d 337, 357 appeal

denied, 105 A.3d 736 (Pa. Super. 2014) (internal citations omitted). After receipt of the report,

the district attorney's office must determine whether to praceipe the court for a hearing prior to

sentencing on whether the defendant should be classified as an SVP. At this hearing, the

Commonwealth has the burden of proving to the trial court that by clear and convincing evidence

the defendant is an SVP. Id. at 9799.24(e)(3).

  In order for a defendant to be deemed an SVP, "The Commonwealth must first show [the

defendant] has been convicted of a sexually violent offense as set forth in [section 9799.14].

Secondly, the Commonwealth must show that the individual has 'a mental abnormality or

personality disorder that makes [him] likely to engage in predatory sexually violent offenses.'

When the Commonwealth meets this burden, the trial court then makes the final determination

on the defendant's status as an SVP." Id. at 357-58. 42 Pa.C.S.A. § 9799.12

  An SVP assessment is not a trial or a separate criminal proceeding that subjects the

defendant to additional penalties or punishment. Commonwealth v. Howe, 842 A.2d 436, 445–

---

[6] This is not an exhaustive list; members of the SOAB are permitted to examine information outside of the realm of these factors where appropriate.

446 (Pa. Super. 2004). SVP status is a civil designation and does not require proof beyond a reasonable doubt, as is required in criminal proceedings. Rather, the court determines SVP status based on a showing of clear and convincing evidence that the defendant meets the requirements to be deemed an SVP. Commonwealth v. Killinger, 888 A.2d 592, 600 (Pa. 2005). Pennsylvania Courts have defined the clear and convincing burden standard as:

> [A]n 'intermediate' test, which is more exacting than a preponderance of the evidence test, but less exacting than proof beyond a reasonable doubt. The clear and convincing standard requires evidence that is so clear, direct, weighty, and convincing as to enable the trier of fact to come to a clear conviction, without hesitancy, of the truth of the precise facts in issue.

Commonwealth v. Bishop, 936 A.2d 1136, 1141 (Pa. Super. 2007) (internal citations omitted).

Prior to Appellant's sentencing, an SVP hearing was conducted where Julia Lindemuth, MS, LPC, a member of the SOAB, testified on behalf of the Commonwealth, and Dr. Michael Crabtree, Ph.D., testified on behalf of Appellant. Ms. Lindemuth testified as an expert that it was her professional opinion that based on her interview of Appellant, the jury's decision and the police report, and based upon the factors set forth under SORNA, that Appellant suffered from the mental abnormality of Pedophilic Disorder, Non-Exclusive type and that he met the criteria to be deemed an SVP. The Commonwealth submitted Exhibit A, a copy of Ms. Lindemuth's SOAB report, which contained a thorough and complete SVP assessment of Appellant.

Ms. Lindemuth testified during the hearing that the "[Appellant] was approximately between the ages of 25 and 27 during the instant offense behavior, and the victim was approximately 5 through 7. Which is indicated and consistent with a pedophilic disorder, which is the sexual attraction to prepubescent children." (SVP Transcript, 8/25/15 Page 30 Lines 18-23). She further stated, "I found that [Appellant] met the criteria for pedophilic disorder, which is considered a mental abnormality, and that pedophilic disorder is defined as a sexual interest in

20

prepubescent children lasting for at least six months or more." (SVP Transcript, 8/25/15 Pages 26-27 Lines 22-1). Ms. Lindemuth concluded that, "It was my opinion that [Appellant] met the statute's definition of predatory in that he changed his relationship with his daughter from one of parent/child to one of sexual partner." (SVP Transcript, 8/25/15 Page 29 Lines 18-21).

Dr. Crabtree testified as an expert in this matter, and he stated that in his expert opinion, the Appellant did not qualify as an SVP. Dr. Crabtree explained, "My opinion would be that there's not information to support that he is, so he's not." (SVP Transcript, 8/25/15 Pages 57-58 Lines 25-2). However, Dr. Crabtree testified to the Court that if he had assessed Appellant in the same manner Ms. Lindemuth did, that is examining the multiple guilty verdicts in determining whether an SVP status was appropriate, that he would have reached the same conclusion as Ms. Lindemuth, that the Appellant is an SVP. (SVP Transcript, 8/25/15 Page 58 Lines 8-14). Dr. Crabtree testified that in his opinion, Ms. Lindemuth's report was flawed because it did not contain a more complete sexual history from the Appellant and because it did not contain psychological testing. (SVP Transcript, 8/25/15 Pages 72-73 Lines 24-13).

Based on the evidence presented, this Court determined that Appellant met the criteria for SVP designation. Dr. Crabtree, Appellant's expert, admitted during his testimony that his report was conducted under the premise that the underlying offenses "allegedly occurred." (SVP Transcript, 8/25/15 Pages 78-79 Lines 1-9). Section 9799.24(b)(1) is clear that an SVP assessment includes the examination of the **current** offense; the Appellant is no longer presumed innocent, as he had been convicted of multiple sexual offenses by a jury of his peers. As the Appellant was already convicted, and the statute instructs that any assessment must examine details of the current offense, the Court found Dr. Crabtree's opinion and report to be seriously flawed. As a result, this Court did not find Dr. Crabtree's testimony credible.

21

As the Superior Court has explained, "It is well established that [appellate courts are] precluded from reweighing the evidence and substituting [their] credibility determination for that of the fact-finder." Commonwealth v. Thompson, 106 A.3d 742, 758 (Pa. Super. 2014). "The weight of the evidence is a matter exclusively for the finder of fact, who is free to believe all, part, or none of the evidence and to determine the credibility of the witnesses." Commonwealth v. Gonzalez, 109 A.3d 711, 723 (Pa .Super. 2015). In this matter, the Trial Court determined that Dr. Crabtree failed to provide credible testimony, and it further found the report and testimony submitted by Ms. Lindemuth to be extremely credible and thorough, and that her assessment was conducted pursuant to the statutory requirements of SORNA. Based on Ms. Lindemuth's findings, the Court correctly determined, by clear and convincing evidence, that Appellant met the criteria to be designated an SVP. As the Trial Court's determination is supported by the record, Appellant's SVP status should remain in place and his appeal denied.

### 3. Whether Appellant's trial counsel was ineffective.

Appellant next argues that his trial counsel, Mr. Owen Seman, Esq., was ineffective. Specifically, Appellant's concise statement indicates that Appellant believes Mr. Seman should have "employ[ed] an expert after the [p]reliminary [h]earing when the alleged victim first indicated she had mental health/traumatic problems due to the alleged abuse." He also alleges ineffectiveness because trial counsel did not "fil[e] [any] [p]retrial [m]otions whatsoever in this matter."

In order to demonstrate that trial counsel was ineffective a defendant must show that "(1) the underlying legal claim has arguable merit; (2) counsel had no reasonable basis for his act or omission; and (3) [the defendant] suffered prejudice as a result. Because all three prongs must be demonstrated, the ineffectiveness claim fails if any one of them is not proved." Commonwealth

22

v. Mitchell, 105 A.3d 1257, 1266 (Pa. 2014) (citing Commonwealth v. Pierce, 527 A.2d 973, 975–976 (Pa. 1987)).

Appellant now argues that trial counsel was ineffective for failing to hire an expert to assist him after the victim stated during the preliminary hearing that she suffered from some mental health problems. As our Supreme Court has explained:

> When a defendant claims that some sort of expert testimony should have been introduced at trial, the defendant must articulate what evidence was available and identify the witness who was willing to offer such evidence. Further, trial counsel need not introduce expert testimony on his client's behalf if he is able effectively to cross-examine prosecution witnesses and elicit helpful testimony.

Commonwealth v. Williams, 640 A.2d 1251, 1265 (1994) (citation omitted). First, the preliminary hearing transcript was not introduced as evidence in this case, and therefore the Court has absolutely no idea whether the victim, M.A., testified about any mental health issues. Second, Appellant has not provided the Court with any information that an expert witness was ready, willing, and available to testify about M.A.'s mental state. Furthermore, Appellant has failed to state what impact, if any, an expert's opinion would have made on this case. In addition, Mr. Seman was able to effectively cross-examine M.A. about her mental state during the trial. For example. Mr. Seman and M.A. had the following exchange:

> **Mr. Seman:** And it was that time that you decided to enter yourself into therapy; right?
> **M.A.:** Yes.
> **Mr. Seman:** What type of therapy? Is this a psychologist? A psychiatrist? What type of therapy?
> **M.A.:** This was just a therapist.
> **Mr. Seman:** Okay. Any type of hypnotizing or anything like that that you've gone through?
> **M.A.:** I haven't gone through any of that, no.
> **Mr. Seman:** Has any of that been suggested to you?
> **M.A.:** No.
> **Mr. Seman:** And you've been diagnosed with – you had been diagnosed with postpartum depression?

**M.A.:** Yes.
**Mr. Seman:** Now, does the term "postpartum psychosis" mean anything to you?
**M.A.:** No.

(Trial Transcript, 2/5/15, Page 121 Lines 7-23).

Appellant has not articulated what effect hiring an expert would have had on the jury's verdict in this case. Moreover, Appellant has not provided the Trial Court with any evidence that an expert was ready, willing and able to testify regarding M.A.'s mental state and/or conditions. Importantly, neither the jury nor the Court were provided with any evidence that M.A. even testified about her mental state during the preliminary hearing in this case; no testimony pertaining to her mental condition was made available by way of transcript, nor was it presented by way of testimony. Most importantly, as demonstrated above, Appellant's trial counsel was able to cross-examine M.A. about her mental conditions and was therefore able to elicit helpful testimony, namely that M.A. had been suffering from postpartum depression. Based on the above, it is clear that Appellant cannot succeed in arguing that trial counsel was ineffective, as he cannot demonstrate that his legal claim has any arguable merit. Accordingly, Appellant's appeal should be denied, and his conviction should stand.

Appellant next argues the trial counsel was ineffective because he failed to file any pretrial motions in this case. Appellant's concise statement fails to indicate which type of pretrial motions he believes trial counsel should have filed, and therefore the Court cannot meaningfully address this argument. Because Appellant has failed to establish that his claim has any legal merit, he cannot demonstrate that trial counsel was ineffective. As a result, Appellant's appeal should be dismissed as a matter of law.

24

## CONCLUSION

For the reasons set forth above, the Trial Court respectfully submits that the Order of the Trial Court dated November 17, 2015 be affirmed and the Appellant's appeal dismissed.

DATE:                                                    BY THE COURT:

1-25-16                                    _Valarie Costanzo_ , J.

                                                         Valarie Costanzo

RECEIVED
9/11/2018 6:56:59 PM
SUPERIOR COURT
MIDDLE DISTRICT

25